# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RIDEL PADRON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12-cv-08089 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| WAL-MART STORES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ridel Padron alleges that his former employer, Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), subjected him to various forms of discrimination because of his Cuban national origin. He claims that he was paid less and given less work schedule flexibility than non-Cuban employees, that he was subjected to anti-Cuban harassment that included slurs and graffiti, and that he was constructively discharged for reporting the discrimination. He seeks relief for the alleged discrimination and retaliation under 42 U.S.C. § 1981. Now before the Court is Wal-Mart's motion for summary judgment. (Dkt. No. 73.) For the reasons detailed below, Wal-Mart's motion is granted.

## BACKGROUND

On February 23, 2016, this Court entered a final dispositive motion scheduling order that set March 21, 2016 as the deadline for such motions, with responses due April 18, 2016. (Dkt. No. 72.) In accordance with the scheduling order, Wal-Mart filed its motion for summary judgment on March 21; the motion was supported by a statement of undisputed material facts as required by Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1. (Dkt. Nos. 73, 75.) On April 11, 2016, Padron, citing counsel's litigation schedule, filed a motion for an

extension of the summary judgment response deadline. (Dkt. No. 76.) That motion was granted and the deadline reset to May 24, 2016, with Wal-Mart's reply to be filed on July 1, 2016. (Dkt. No. 78.) On July 6, 2016, this Court issued an order noting that Padron had not filed a response to Wal-Mart's motion or a request for a further extension of the filing deadline and ruled that the motion would be decided without further briefing. (Dkt. No. 80.) As a result of Padron's failure to contest Wal-Mart's statement of undisputed facts, those factual statements are deemed admitted for purposes of the present motion. Fed. R. Civ. P. 56(e)(2); L.R. 56.1(b)(1)(C) (N.D. Ill.); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The following factual summary is therefore taken from Wal-Mart's Rule 56 statement.

Padron was employed at Wal-Mart's St. Charles, Illinois store, where he began work in July 1998 as a truck unloader in the receiving department. (Def.'s R. 56.1 Stmt. ¶¶ 1, 13, Dkt. No. 75.) He moved to a cart pusher position in February 2001. (*Id.* ¶ 15.) In June 2005, he began work as an inventory control associate and continued that work until his separation from the company on February 7, 2010. (*Id.*) During Padron's tenure at Wal-Mart, pay increases were based on the performance rating the employee received on his annual performance review. (*Id.* ¶ 62.) Padron believed that his pay was lower than that of his three non-Cuban inventory control coworkers, but he did not see their checks and did not know how much they were paid. (*Id.* ¶ 65.)

Work schedules for Padron's positions at Wal-Mart were set by computer after employees filled out sheets that specified which days of the week they could and could not work. (*Id.* ¶¶ 21–22.) During some of his time as an unloader, Padron wanted to get some weekends off but never got them. (*Id.* ¶ 23.) Other employees who were not Cuban did get Saturdays and Sundays off. (*Id.*) Padron never saw any of their scheduling availability forms. (*Id.* ¶ 24.) He

later told an assistant manager that he wanted weekends off. That request was accommodated and he did not thereafter remember being denied those off days when any other employee received them. (*Id.* ¶¶ 29–30.) The scheduling process did not guarantee that employees that requested days off would be able to work 40 hours in a week. (*Id.* ¶ 22.)

On more than one occasion during Padron's time as a cart pusher, an assistant manager directed him to take out garbage and, in giving that directive, bypassed a non-Cuban cart pusher who was less burdened with work at the time. (*Id.* ¶ 32.) While Padron was working in inventory control, another assistant manager directed him to go outside to collect carts in a rainstorm but made no such request to non-Cuban employees. (*Id.* ¶ 33.) Padron had no clothing that would protect him from the rain and refused to go outside; he suffered no discipline as a result of the refusal. (*Id.*) The same assistant manager screamed at him over the store intercom and also screamed at him once in the store's lunch room for failing to respond to her intercom calls. (*Id.* ¶ 37.)

Padron saw drawings in the store bathroom that depicted boats and stick figures along with the words "Cuban" and "little fish." (*Id.* ¶ 38.) He did not know who made the drawings. (*Id.*) He complained about them and they were cleaned up. (*Id.*) Although he did not remember the time or the speaker, he heard someone comment that "the dolphins are coming." (*Id.* ¶ 39.) He was not sure of the meaning of that remark. (*Id.*) Some coworkers asked him if he came from Cuba by raft or by plane. (*Id.* ¶ 40.) Others laughed at the way he spoke. (*Id.* ¶ 41.) In addition, Brad Wilson, who was store manager from 2004 to 2007, once told Padron that "Cubans are just like Irish people." (*Id.* ¶¶ 34, 36.) Padron was not sure what Wilson meant by that remark. On a cold day when Padron was working as a cart pusher, he wore a hood that partially covered his face and Wilson said to him, "You look like a Taliban." (*Id.* ¶ 35.)

3

Other Cuban employees at Wal-Mart's St. Charles store filed with the Equal Employment Opportunity Commission ("EEOC") a complaint about discrimination they faced at the workplace, and Padron cooperated with the EEOC investigation of that complaint. (*Id.* ¶ 42.) He also discussed the discrimination against Cubans with a Wal-Mart regional manager on more than one occasion. (*Id.* ¶¶ 45, 46.) Padron believes that Wal-Mart retaliated against him for discussing discrimination by cutting his work hours and giving him "coachings," which were early steps in the company's progressive discipline process, about alleged incidents when he began his lunch hour slightly later than the required start time. (*Id.* ¶¶ 46, 48.) He also believes that he was retaliated against while working as a cart pusher when a manager told him that he had to have the cart area full before he went to lunch. (*Id.* ¶ 49.)

Padron requested and received approval for two weeks of medical leave to begin on December 23, 2009 and end on January 10, 2010. (*Id.* ¶ 52.) Padron's wife also worked at the store, and managers learned from her that he had found another job while on leave and would not be returning. (*Id.* ¶¶ 54, 56.) In its personnel files, Wal-Mart documented Padron's separation as voluntary and categorized him as eligible for rehire. (*Id.* ¶ 56.) Padron testified at his deposition that a store manager named Darryl told him that he was not at the level of other employees and that he had 15 days to raise his performance level. (Padron Dep. at 130-31, Dkt. No. 75-1.) Padron further testified that he attempted to return to work in January 2010 but was told by a woman in the personnel department not to punch in and instead to go and see Darryl. (Padron Dep. at 131, Dkt. No. 75-1.)

Padron's complaint alleges that he was paid less than similarly-situated non-Cuban employees, that he was subjected to a "variable schedule" and not told about it while non-Cuban employees were not subjected to that schedule, that he was denied make-up days while non-

4

Cuban employees were allowed to take them, that he was subjected to racial slurs and racist graffiti, and that he was constructively discharged for reporting the discrimination and assisting in the EEOC's investigation. (First Am. Compl. ¶ 27, Dkt. No. 33.) He seeks relief under 42 U.S.C. § 1981.

**DISCUSSION**

A moving party is entitled to summary judgment if it can show that there is no genuine dispute as to any material fact and thus it is entitled to judgment as a matter of law. *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1015 (7th Cir. 2016). The movant has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim. *Id.* at 1016. As noted above, Padron's failure to contest Wal-Mart's assertions of undisputed facts results in the admission of those assertions for purposes of this action. *Raymond*, 442 F.3d at 608. Nonetheless, the Court must review the record to determine whether it demonstrates that Wal-Mart is entitled to judgment as a matter of law. *Nabozny v. Podlesny*, 92 F.3d 446, 457 n. 9 (7th Cir. 1996); *White v. United Credit Union*, 111 F. Supp. 3d 878, 881–82 (N.D. Ill. 2015). Padron's discrimination claims under § 1981 are analyzed in the same manner as similar claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Precedents addressing claims under that statute are thus applicable here. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

### I. Pay and Work Schedule Discrimination

Padron's claims of discriminatory pay and scheduling survive summary judgment if supported by evidence of "an admission by the decisionmaker that the adverse employment

5

action was motivated by discriminatory animus." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). No such evidence is present in the record here.

Discriminatory motive sufficient to permit a plaintiff to survive summary judgment may also be established under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff has the initial burden of establishing that (1) he is a member of a protected class; (2) he performed reasonably on the job in accord with his employer's legitimate expectations; (3) despite his reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably by the employer. *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id.* The plaintiff must produce evidence in response to the motion and cannot rely on his pleadings. *Hummel*, 817 F.3d 1010, 1016 (7th Cir. 2016).

The initial burden and pretext inquiries often overlap and may be considered together when the same factual issues relate to both. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). Here, Padron's failure to contest Wal-Mart's motion leaves him short of meeting both his initial burden of showing similarly-situated employees who were treated better than he and his burden of establishing that Wal-Mart's explanations for the allegedly discriminatory pay and schedule differences were pretextual.

To make the necessary showing of similarly-situated comparators, a plaintiff must demonstrate not only that the comparators dealt with the same supervisor and were subject to the same standards, but also that they had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309–10 (7th Cir. 2012). Here, Padron has failed to offer evidence from which a reasonable jury could conclude that non-Cubans who received better pay or treatment were similarly situated. The record includes only two performance reviews of one comparator identified by Padron as a non-Cuban unloader who received higher pay—an insufficient basis to demonstrate the genesis of the asserted pay differentials, their development over time, or the relative historical assessments of the two workers. Nothing in the record offers any basis for comparison between Padron's pay and that of any of his coworkers in the cart pusher and inventory control positions he held for the last nine years of his Wal-Mart tenure. The record does not detail the circumstances of the scheduling and make-up day occurrences that Padron claims disfavored him.

Padron has thus failed to provide sufficient evidence to permit a jury to conclude that any alleged comparators were similarly situated. In the absence of evidence of similarly-situated employees who received better treatment, Padron has fallen short of his initial burden of showing discrimination and cannot survive summary judgment on his claims related to pay and schedules. *Simpson,* 827 F.3d at 661; *Henry v. Jones*, 507 F.3d 558, 565–66 (7th Cir. 2007).

Padron also fails to meet his burden of responding to Wal-Mart's claimed non-discriminatory reasons for the alleged differential treatment. As noted above, Wal-Mart attributes the pay variances between Padron and other employees to their performance reviews. The minimal performance review evidence and the absence of historical assessments offer no basis

for disputing Wal-Mart's assertion. Padron has similarly failed to contest Wal-Mart's assertions that employee schedules were determined by computer.

Padron's failure to respond to the non-discriminatory explanations for the adverse actions at issue is, by itself, a sufficient basis for the entry of summary judgment against him on those claims. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment." *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see also Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) ("when a defendant proffers legitimate, nondiscriminatory reasons for its employment actions, the defendant wins, unless plaintiff refutes the underlying facts (which would reveal those reasons were dishonestly given)").

In summary, Padron has failed to present admissible evidence of an explicit admission of a discriminatory Wal-Mart motive for any pay differences or scheduling treatment between himself and non-Cuban employees, has failed to support his claims of discriminatory motives for those differences with sufficient evidence that other employees were similarly situated, and has failed to dispute Wal-Mart's explanations for the actions. On this record, no reasonable juror could return a verdict in his favor on his pay and schedule claims.

## II. Retaliatory Constructive Discharge

Padron further claims that he was constructively discharged for complaining about discrimination and cooperating with investigations of other Cubans' complaints. Wal-Mart construes Padron's deposition testimony about receiving a 15-day performance warning and being ordered to leave the store upon his attempted return as allegations of an involuntary termination inconsistent with his constructive discharge allegations. Wal-Mart asks that the testimony on these subjects be stricken. The Court finds no inconsistency between Padron's

complaint allegations and his deposition testimony, however. Although one form of constructive discharge occurs when an employee voluntarily resigns after hostile work conditions have become unbearable and any such claim would be difficult to reconcile with Padron's denial that he left Wal-Mart voluntarily, constructive discharge also occurs when occurs when an employer acts in a manner so as to have communicated to a reasonable employee that he will be terminated. *Wright v. Ill. Dep't of Children & Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015); *EEOC v. Univ. of Chicago Hosps.,* 276 F.3d 326, 332 (7th Cir. 2002). Padron's deposition testimony about his encounters with "Darryl," the store manager at the time of his separation, is consistent with the latter form of constructive discharge and cannot be disregarded here.

Wal-Mart's summary judgment motion imposes upon Padron a burden of production for his retaliatory constructive discharge claim that is similar to his burden for his other adverse action claims. Where, as here, the record is devoid of evidence akin to a defendant's admission of a discriminatory motive, the plaintiff must show that (1) he engaged in statutorily protected expression by complaining about prohibited discrimination; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected expression and the adverse job action. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). If the plaintiff makes that showing, the burden then shifts to the defendant to demonstrate a non-discriminatory reason for the adverse action, and that demonstration would require the plaintiff to present evidence that the stated reason was pretextual. *Id.* at 1007-08.

In this case, the actions of the store manager who, according to Padron, warned him about his performance and told him to leave the store upon his attempted return to work are not linked to his protected expression by any evidence. The record is devoid of any suggestion that the

9

manager was aware of, or acted in response to, Padron's discrimination complaints or his cooperation in any investigation.

A temporal connection between an employee's protected expression and his employer's adverse action may satisfy the causal link requirement, *see Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996), but the record negates any inference of such a temporal connection here. Padron testified that he answered the questions of an unknown person about discrimination (with a Wal-Mart regional manager serving as his Spanish-English translator) at a meeting about which store manager Brad Wilson told him. (Padron Dep. at 111-13, Dkt. No. 75-1.) Wilson left the St. Charles store in 2007. (Wilson Dep. at 4, Dkt. No. 75-1.) The time between Wal-Mart's knowledge of Padron's expression and the allegedly retaliatory warning and discharge in 2009 was more than one year and included a change in store managers. The Court concludes that the timing and sequence of events would not permit a reasonable inference of a causal connection between a protected activity and an adverse action. Padron's constructive discharge claim thus lacks sufficient evidence of a causal link to his protected activity to permit its submission to the jury.

### III.     Hostile Work Environment

Padron claims that he was subjected to a hostile work environment. To survive a summary judgment motion, a plaintiff's hostile racial environment claim must be supported by sufficient evidence to create a material issue of fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) race must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). The plaintiff must show that the alleged harassment was both subjectively and

objectively so severe or pervasive that it altered the conditions of his employment. *Id.* The environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Id.* A hostile work environment is not created by merely offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating. *Id.*

A single act of harassment may create a hostile work environment if it is sufficiently egregious. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). For example, a single assault may suffice. *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008); *Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999). Nothing in the record suggests any act of that severity. Nor does the record reveal the kind of unambiguous epithet considered to be towards the "more severe" end of the severity continuum. *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002).

In the absence of a showing of severity of the harassment, evidence of the frequency and duration of the alleged conduct is significant. *Cerros,* 288 F.3d at 1047. But the record here offers no evidence of either dimension of the supposedly harassing conduct. Since Padron was employed by Wal-Mart for eleven years, the number of incidents described by his deposition testimony—without evidence that they were concentrated at the end of his tenure—do not support an inference that they were frequent or pervasive rather than sporadic and isolated. Infrequent occurrences of non-severe harassment are an insufficient basis for submitting a hostile environment claim to a jury. *See Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648–49 (7th Cir. 2011) (collecting cases).

## CONCLUSION

The record before this Court contains insufficient evidence to permit Padron to submit to a jury his claims of discriminatory pay and scheduling, retaliatory constructive discharge, and hostile work environment. Wal-Mart is therefore entitled to judgment as a matter of law and its motion for summary judgment (Dkt. No. 73) is accordingly granted.

ENTERED:

Dated: March 31, 2017

_____
Andrea R. Wood
United States District Judge